# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 11-CR-677 |
| ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| DEMARKO SMITH aka ) | |
| DEMARKO WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

DeMarko Smith[1] has been charged with one count of knowingly possessing a firearm in violation of 18 U.S.C. 922(g)(1) and one count of knowingly and intentionally possessing a controlled substance with the intent to distribute in violation of 18 U.S.C. 841(a)(1). Chicago Police Officers Skarupinski and Officer Byrne seized a Smith & Wesson .380 semi-automatic pistol and six individually wrapped baggies containing crack cocaine during their sidewalk encounter with and stop of Smith. Smith moves to suppress all evidence obtained and statements made as a result of the stop and subsequent arrest as the fruit of an illegal search. For the following reasons, the court finds that the officers' account of the *Terry* stop at the suppression hearing was not credible and that the officers' did not demonstrate that they possessed sufficient reasonable suspicion to subject Smith to a *Terry* stop. Defendant's motion to suppress is granted.

---

[1] DeMarko Smith stated in court that his given last name was Williams; however this order will refer to him as "Smith", the name under which he was charged.

# FACTS

Officers Byrne and Skarupinski were patrolling in the 5th police district, specifically in the residential neighborhood of 113th Place and Perry Street on April 17, 2011 at approximately 8:20 PM. Officer Byrne is a tactical Chicago police officer assigned to the Fifth District and has been with the Chicago Police Department for over four years. Officer Skarupinski also testified that he had been a Chicago police officer for over four years and is a tactical officer assigned to the Fifth District. On April 17th Skarupinski was driving an unmarked squad car and Byrne was seated in the passenger seat. Byrne testified that the officers were on an "arms mission" to prevent firearms-related violence in the area. Smith, a tall, heavy black man dressed in dark pants and a long-sleeved dark top, walked alone on the sidewalk south on Perry and then westbound on the one way eastbound street of 113th Place.

After observing Smith walking alone, the officers decided to follow him down the one-way street, driving in the wrong direction and at a slow-idle speed. When the unmarked squad car pulled abreast of Smith, Officer Byrne focused on Smith's waistband area because "that is a very common area where people are known to carry firearms." While focusing on Smith's waist, from inside the police car approximately 25 feet away from the sidewalk, Officer Byrne saw the butt of a handgun at Smith's waistband. Officer Byrne testified that he stated "gun" and Skarupinski stopped the slow-moving car. Once the car had been stopped, Officer Byrne exited the vehicle without drawing his weapon and ordered Smith to show his hands. According to the officer's testimony, Smith complied with that request but was non-compliant with Byrne's attempts to handcuff him. Upon stopping the car, Officer Skarupinski left the car with

his gun drawn in the "low-ready" position, but holstered it when he saw his partner struggling to handcuff Smith and began to assist with Smith's arrest. Both officers testified that a gun was visible in Smith's waistband throughout the struggle which continued into the street in front of the squad car. During the struggle both officers' testified that Smith kept one fist clenched until reaching the squad where he took threw small baggies of suspect drugs on the hood of the car. Then Smith, according to the officers, pulled a gun out of his waistband, which Skarupinski knocked out of his hand and onto the ground.

Early on in the incident, Skarupinski requested assisting units to help with Smith's arrest although no reference to an armed suspect was conveyed during the request. One of the assisting officers, Officer Stacker, a 15 year veteran, testified that once at the scene of the stop, he saw the arresting officers' attempts to handcuff Smith in front of the squad, Smith subdued on the ground then handcuffed and a gun being recovered from under the squad car by Skarupinski. Once handcuffed, Smith was arrested and charged with possessing a semi-automatic and six individually wrapped baggies of suspect crack cocaine.

Smith now brings forth this motion to suppress arguing that he was confronted and detained by Chicago police officers for no reason or at most based on a suspicion or hunch, then eventually, handcuffed and arrested because he would not get off the phone or on the ground as ordered by the arresting officers. Smith contends that this was an unreasonable detention and unlawful arrest which requires the suppression of all evidence seized and all statements made as a result of the arrest.

**Legal Analysis**

In *Terry v. Ohio*, the Supreme Court noted that not all personal interaction between policemen and citizens is impermissible, but instead police officers can stop and detain a person for certain investigative purposes. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry* stops are permissible when a police officer has a reasonable suspicion supported by articulable facts that criminal activity has or is likely to occur. *Id.* at 21-22. While reasonable suspicion requires less than probable cause, it requires more than a mere "hunch." *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011). Further, the Seventh Circuit has held that whether an officer had a reasonable suspicion is based upon "the totality of the circumstances" and "'common-sensical judgments and inferences about human behavior.'" *Jewett v. Anders*, 521 F.3d 818, 823-25 (7th Cir. 2008) (quoting *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005)); *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999) (citing *United States v. Quinn*, 83 F.3d 917, 921 (7th Cir. 1996)).

**Discussion**

Here, the Court applies the foregoing legal standards to one question: whether the officers had a reasonable suspicion to stop Smith as he was walking near the intersection of Perry Street and 113th Place. The government argues that the police officers had reasonable suspicion based on the fact that (1) Officer Byrne testified that he observed the butt of a handgun exposed in Smith's waistband; (2) Byrne's testimony was corroborated by Skarupinski who also saw the butt of a handgun once he exited his squad car; (3) Skarupinski eventually struck a handgun out of Smith's hand and (4) Officer Stacker saw Skarupinski retrieve a handgun from underneath Skarupinski's squad car.

According to the government, this combination of circumstances was enough to demonstrate that the initial stop of Smith was constitutionally justified. The court's review of the testimony finds the government's arguments unpersuasive.

    First, Byrne alleges to have seen the three (3) inch handle of a dark handgun against Smith's dark shirt from a distance of 25 feet, in a moving car, at night. Not only does the court find it implausible that Byrne was able to see the handgun under these circumstances, Byrne's subsequent actions shed further doubt on his testimony. Upon seeing the gun, Byrne testified that he did not attempt to disarm Smith, but instead engaged in a physical struggle with Smith to place him under arrest. The court finds it highly unlikely that a trained police officer would engage in physical wrangling with an armed defendant instead of first disarming the defendant, especially when the police officer knows the exact location of the weapon. *United States v. Price*, 328 F.3d 958, 960 (7th Cir. 2003) (finding it credible that an officer held reasonable suspicion when the officer saw a person with a gun and upon seeing the gun, the officer ordered the defendant to the ground and confiscated the gun.)

    Next, Officer Skarupinski claims to have also seen a handgun in Smith's waistband after stepping out of his squad car. Officer Skarupinski's testimony, however, contains certain inconsistencies and omissions, which limits the court's ability to rely on it. For example, at a preliminary hearing on May 11, 2011, Skarupinski, testified that he saw the gun from his position in the driver's seat in Willliams's waistband *prior* to stepping out of his squad car, not after he stepped out of his squad car as he stated at the suppression hearing. Skarupinski further testified that he exited his squad car with his weapon in the "low ready" position. This fact was never mentioned in the arrest reports,

in any of Skarupinski's or Byrne's prior testimony or interview reports. Rather this detail was first mentioned at the suppression hearing after the defense questioned the officers about the likelihood of police officers approaching an armed subject without having previously drawn their weapons. Even if this Court were to give little weight to Skarupinski's inconsistencies, more telling is Skarupinski's testimony that he later holstered his weapon to assist Byrne in his attempts to handcuff Smith. For an officer to put away his gun upon the witnessing a physical altercation between his partner and an armed subject seems unlikely. Another important factor in determining the officer's credibility is testimony that Officer Skarupinski's call for backup to assist with Smith's arrest failed to mention that Smith was armed. Given the significance of that detail and the purpose of the arms mission, the court can only assume that if Skarupinski knew that Smith had a gun in his waistband, he would have included that information in his request for assisting units. Skarupinski's failure to do so combined with the other inconsistencies in his testimony render his testimony unpersuasive and insufficient to corroborate the questionable testimony of his partner.

Lastly, the government relies on two details that occurred after the stop to support its contention that the officers had reasonable suspicion in compliance with *Terry*. The government contends that Skarupinski knocked a handgun from Smith's hand and that Officer Stacker witnessed Skarupinski retrieve a handgun from underneath Skarupinski's squad car. However, reasonable suspicion must exist at the time that the officer stops an individual. *Ienco*, 182 F.3d at 524 (citing *United States v. Smith*, 3 F.3d 1088, 1095 (7th Cir. 1993). The fact that both Skarupinski and Stacker offered testimony concerning specific details about a handgun after the *Terry* stop was made, shed no light on the issue

of whether the arresting officers, Byrne and Skarupinski actually saw a handgun in Smith's waistband prior to the stop.

Most telling is Skarupinski's testimony that the officers had no reason to believe that Smith was engaged in any wrongdoing when they decided to follow him while he was walking down the street at 8:20 in the evening. Instead, officers testified that they chose to drive in the opposite direction of a one-way street because they were in a "violent zone and were paying attention to [Smith] walking down the sidewalk." This testimony, coupled with the testimony that both officers engaged in a wrestling match with an armed subject without trying to remove a handgun visible in Smith's waistband, that the handgun failed to dislodge during the altercation, that Skarupinski made no mention of an armed subject when radioing for assistance and that there was no mention of an attempt made by Smith to hide or conceal a weapon upon approach by the officers, defies common sense. Given the totality of the circumstances as set forth by the arresting officers, this court finds it implausible that Officer Byrne and Skarupinski held the requisite reasonable suspicion to perform a *Terry* stop on DeMarko Smith.

## CONCLUSION

For the foregoing reasons, this Court grants defendants' motion to suppress from evidence any items recovered from his person and statements made as a result of his arrest on April 17, 2011 as such evidence is the result of an unlawful search and seizure.

IT IS SO ORDERED.

May 11, 2012

Hon. Sharon Johnson Coleman
United States District Court